No. 20-14741-RR

In the

# United States Court of Appeals
## for the Eleventh Circuit

GEORGIA REPUBLICAN PARTY, INC., *et al.*,
*Appellants*,

v.

GEORGIA SECRETARY OF STATE, *et al.*,
*Appellees*.

On Appeal from the United States District Court for the Northern District of Georgia, Atlanta Division.
No. 1:20-cv-05018-ELR — Eleanor L. Ross, *Judge*

# APPELLEES' RESPONSE TO MOTION FOR INJUNCTION PENDING APPEAL

Christopher M. Carr
*Attorney General of Georgia*
Bryan K. Webb,
*Deputy Attorney General*
Russell D. Willard
*Senior Assistant Attorney General*
Charlene S. McGowan
*Assistant Attorney General*
Office of the Georgia Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3658
cmcgowan@law.ga.gov

*Counsel for Appellees*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Callais, Amanda R., Counsel for Intervenors,

Carr, Christopher M., Attorney General, Counsel for Defendants-Appellees,

Clarke, Kristen, Counsel for Amici,

Coppedge, Susan, Counsel for Intervenors,

Cullen, Richard, Counsel for Plaintiffs-Appellants,

Democratic Party of Georgia, Inc., Intervenor,

Democratic Senatorial Campaign Committee, Intervenor,

Elias, Marc E., Counsel for Intervenors,

Farley, Peter N., Counsel for Plaintiffs-Appellants,

Francisco, Michael L., Counsel for Plaintiffs-Appellants,

Geise, John M., Counsel for Intervenors,

Georgia Coalition for the People's Agenda, Amicus,

Georgia Republican Party, Inc., Plaintiff-Appellant

Georgia State Conference of the NAACP, Amicus,

Georgians for Kelly Loeffler, Plaintiff-Appellant,

Greenbaum, Jon M., Counsel for Amici,

Hawley, Jonathan P., Counsel for Intervenors,

Hill, Laura, Counsel for Intervenors,

Houk, Julie M., Counsel for Amici,

Knapp, Jr., Halsey G., Counsel for Intervenors,

Krevolin and Horst, LLC, Counsel for Intervenors,

Lawyers' Committee for Civil Rights Under Law, Counsel for Amici,

Le, Ahn, State Election Board member, Defendant-Appellee,

Lewis, Joyce Gist, Counsel for Intervenors,

Mashburn, Matthew, State Election Board member, Defendant-Appellee,

McGowan, Charlene S., Assistant Attorney General, Counsel for Defendants-Appellees,

McGuire Woods, LLP, Counsel for Plaintiffs-Appellants,

Mertens, Matthew J., Counsel for Intervenors,

National Republican Senatorial Committee, Plaintiff-Appellant,

Perdue for Senate, Plaintiff-Appellant,

Perkins Coie LLP, Counsel for Intervenors,

Powers, John M., Counsel for Amici,

Raffensperger, Brad, Secretary of State, Defendant-Appellee,

Rosenberg, Ezra D., Counsel for Amici,

Ross, Hon. Eleanor L., U.S. District Court Judge,

Sells, Bryan L., Counsel for Amici,

Sparks, Adam M., Counsel for Intervenors,

Spears, Brooks H., Counsel for Plaintiffs-Appellants,

Sullivan, Rebecca N., Vice Chair of the State Election Board,
Defendant-Appellee,

Taylor, Torryn, Counsel for Intervenors,

Terwilliger, George J., Counsel for Plaintiffs-Appellees,

Webb, Bryan K., Deputy Attorney General, Counsel for
Defendants-Appellees,

Willard, Russell D., Senior Assistant Attorney General, Counsel
for Defendants-Appellees,

Worley, David J., State Election Board member,
Defendant/Appellee

The undersigned counsel certifies that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ *Charlene S. McGowan*
CHARLENE S. MCGOWAN 697316
Assistant Attorney General

## TABLE OF CONTENTS


Introduction ........................................................................ 1

Statement of the Case ........................................................ 3

A. Proceedings Below ............................................................ 3

B. Factual Background ........................................................ 4

Argument ............................................................................ 6

I. An injunction is not warranted because the district court correctly held that it lacks subject jurisdiction over the action. ......................................................................... 6

A. Appellants have not clearly alleged an injury in fact..... 7

1. Appellants allege a generalized grievance, not a particularized and concrete injury. ............................ 8

2. Appellants' alleged injury is based on hypothetical future harm that is not certainly impending. ......... 11

B. Appellants' alleged injuries are not traceable to Appellees, nor can they be redressed by their requested relief. ........................................................................ 13

II. This Court should deny injunctive relief under *Purcell v. Gonzalez* because the election process is already underway. ......................................................................... 15

III. Appellants cannot satisfy the requirements for the extraordinary remedy of an injunction. ............................ 18

A. Appellants are not likely to prevail on the merits of the appeal ........................................................................ 18

1. Appellants' claim under the First and Fourteenth Amendments fails because they allege no harm to their voting or associational rights ......................... 19

TABLE OF CONTENTS
(continued)

Page

2. Appellants' equal protection claim fails because they cannot show arbitrary and disparate treatment among classes of voters ........................................... 21

3. Appellants' procedural due process claim fails. ...... 23

B. The remaining factors weigh heavily against an injunction. ..................................................................... 23

IV. Laches bars Appellants' Claims. ......................................... 24

Conclusion ........................................................................... 26

# TABLE OF AUTHORITIES

Cases

*Baker v. Carr*, 369 U.S. 186 (1962) .................................................. 9

*Bognet v. Sec'y Commonwealth of Pa.*, 2020 WL 6686120 (3d Cir. Nov. 13, 2020) ............................................................. 9, 20

*Bush v. Gore,* 531 U.S. 98 (2000) ............................................ 21, 22

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......................... 12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ..................11,12

*Curry v. Baker*, 802 F.2d 1302 (11th Cir. 1986) ............................. 20

*Gamza v. Aguirre*, 619 F.2d 449 (5th Cir. 1980) ............................ 20

*Gill v. Whitford*, 138 S. Ct. 1916 (2018) .................................8, 9, 11

*Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259 (11th Cir. 2011) .................................................. 13

*Indep. Party of Fla. v. Sec'y, State of Fla.*, 967 F.3d 1277 (11th Cir. 2020) ......................................................................... 11

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................... 7

*New Ga. Project v. Raffensperger*, 976 F.3d 1278 (11th Cir. 2020) .................................................................*passim*

*Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) .............................*passim*

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205 (2020) ......................................................................... 24

*Roe v. Alabama ex rel. Evans*, 43 F.3d 574 (11th Cir. 1995) ......... 10

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ................................ 7

*Touchston v. McDermott*, 234 F.3d 1130 (11th Cir. 2000) ............. 18

*Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990 (11th Cir. 2020) ........................................................................ 7

*Wood v. Raffensperger*, __ F. 3d __, 2020 U.S. App. LEXIS 37971 (11th Cir. Dec. 5, 2020) ...................................................... *passim*

*Wood v. Raffensperger*, 2020 U.S. Dist. LEXIS 218058 (N.D. Ga. Nov. 20, 2020) ........................................................................ 25

Statutes

O.C.G.A. § 21-2-386 ................................................................ 4, 14

## INTRODUCTION

Appellants ask the Court for the extraordinary remedy of enjoining Georgia's 159 counties (none of which are parties) from following established absentee ballot procedures for the ongoing January 5, 2021, run-off election, pending appeal. The rules and guidance for verifying and processing absentee ballots have been in place for at least four separate elections in 2020, and yet Appellants inexcusably delayed in seeking relief until last week. Moreover, Appellants' claims have been the subject of numerous lawsuits that have been rejected by this Court and other courts since the November general election.[1]

The district court correctly determined that Appellants lacked Article III standing and dismissed the action, and this Court should affirm that decision. The factual and legal underpinnings of this case are nearly identical to those in the case of *Wood v. Raffensperger*, __ F. 3d __, 2020 U.S. App. LEXIS 37971 (11th Cir. Dec. 5, 2020), in which this Court rejected the plaintiff's vote

---

[1] *See Texas. v. Georgia*, No. 22O155 (U.S. Sup. Ct.) (motion for emergency writ denied); *Wood v. Raffensperger*, No. 1:20-cv-04651-SDG, 2020 U.S. Dist. LEXIS 218058 (N.D. Ga. Nov. 20, 2020), *aff'd* Appeal No. 20-1245-C, 2020 U.S. App. LEXIS 37971 (11th Cir. Dec. 5, 2020) (affirming denial of motion for emergency injunction); *Pearson v. Kemp*, No. 1:20-cv-4809 (N.D. Ga.) (dismissed).

dilution theory of standing—the same theory raised by Appellants here. Relying on *Wood* and other controlling decisions of this Court, the district court correctly held that Appellants failed to establish an injury in fact sufficient to establish standing and dismissed the action.

Because Appellants lack standing, they are not likely to succeed on the merits of their appeal and their extraordinary request to enjoin critical processes for the ongoing run-off election should be denied. The merits of their constitutional claims fare no better, as they are based solely on questionable statistical analysis—rather than actual proof—that invalid ballots are likely to be counted for the run-off election.

Moreover, an injunction would be harmful to the timely and orderly administration of the run-off election. As this Court has cautioned, federal courts should not interfere with state administration of an election while it is ongoing. *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020). County election officials have already received, processed, and accepted over 500,000 absentee ballots under the state's existing rules and procedures. Elections officials are already operating with one hand tied behind their back due to the rising Covid-19 epidemic. Any further disruption to the process is certain to delay the tabulation

and reporting of results for the high-profile run-off election. Accordingly, any injunction entered by this Court "would thus violate *Purcell*'s well-known caution against federal courts mandating new election rules—especially at the last minute." *Id.*

## STATEMENT OF THE CASE

### A. Proceedings Below

On December 10, 2020, Appellants filed a Verified Complaint, along with Emergency Motion for Temporary Restraining Order and Preliminary Injunction, raising various constitutional claims alleging that county elections officials were improperly or inconsistently applying the rules and procedures for verifying voter signatures on absentee ballot envelopes. Appellants moved for an injunction that would have required counties to triple the number of elections workers involved in the signature-verification process, allow monitoring of the process by party observers (already allowed by the Secretary of State), and provide training on signature matching (which has already been provided by GBI experts). On December 16, 2020, Appellees filed a response in objection to the emergency motion and moved to dismiss the action for lack of subject matter jurisdiction.

On December 17, 2020, at the conclusion of a hearing on the matter, the district court ruled from the bench that Appellants lacked standing and denied Appellants' emergency motion for injunctive relief and granted Appellees' motion to dismiss. The next day, Appellants filed a motion to stay the district court's order and a notice of appeal.

### B. Factual Background

The underlying facts of this case are nearly identical to those in *Wood.* Like the plaintiff in *Wood*, Appellants raise a constitutional challenge to the rules and guidance currently in place for the verification and acceptance of absentee ballots, which require election officials to "promptly notify" a voter if their ballot is rejected for a missing or mismatched signature on the outer envelope. O.C.G.A. § 21-2-386(a)(1)(C). Election officials must also allow a voter until three days after the date of the election to "cure" any issues with the voter's signature before rejecting an absentee ballot. *Id.*

Early in 2020, the State Election Board adopted a rule that established a uniform standard for counties to follow to "promptly notify" voters when their absentee ballot is rejected. The rule provides that when a timely submitted absentee ballot is rejected, the board of registrars or absentee ballot clerk must send the

voter notice of the rejection and opportunity to cure within three business days, or by the next business day if within ten days of Election Day. Ga. Comp. R. & Regs. r. 183-1-14-.13 (the "Prompt Notification Rule"). The Prompt Notification Rule was adopted pursuant to the SEB's rule-making authority under O.C.G.A. § 21-2-31(2), and has been effective since March 22, 2020.

On May 1, 2020, the Secretary of State distributed an Official Election Bulletin that advised county election officials of the Prompt Notification Rule and provided additional guidance for reviewing signatures on absentee-ballot envelopes ("OEB Guidance"). (ECF Doc. 27-2 ¶ 5). The OEB Guidance instructed that after an election official makes an initial determination that the signature on the absentee ballot envelope does not match the signature on file for the voter, two additional officials should also review the signature, and the ballot should be rejected if at least two of the three officials agree that the signature does not match. (*Id.*) The guidance document expressly instructs county officials to comply with state law. (*Id.*)

Elections officials have been operating pursuant to the Prompt Notification Rule and the OEB Guidance since the June 9, 2020, statewide general primary, primary run-off election held on August 11, 2020, the November 3, 2020, general election, and the

December 1, 2020, run-off election. These procedures have been in place for at least four separate elections, and yet Appellants never raised an objection or legal challenge until they filed this action on December 10, 2020.

Contrary to Appellants' claim that the Prompt Notification Rule and the OEB Guidance significantly altered the signature verification process and rejection rate, these measures have had no detectable effect on the absentee ballot rejection rate since the last general election in 2018. (ECF Doc. 27-2 ¶ 6). An analysis of the number of absentee-ballot rejections for signature issues for 2020 as compared to 2018 found that the rejection *rate* for absentee ballots with missing or non-matching signatures in the 2020 general election was essentially the same rejection rate for signature issues as in 2018, even though the total number of absentee ballots submitted (and rejected) increased exponentially. (*Id.*)

## ARGUMENT

### I. An injunction is not warranted because the district court correctly held that it lacks subject jurisdiction over the action.

Article III of the Constitution limits the subject-matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. A party invoking federal jurisdiction bears the

burden of establishing standing at the commencement of the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As an irreducible constitutional minimum, Appellants must show they have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. Id. at 561. As the party invoking federal jurisdiction, Appellants bear the burden at the pleadings phase of "clearly alleg[ing] facts demonstrating each element." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

### A. Appellants have not clearly alleged an injury in fact.

Injury in fact is the "first and foremost" of the standing elements. *Spokeo*, 136 S. Ct. at 1547. An injury in fact is "an invasion of a legally protected interest that is both concrete and particularized and actual or imminent, not conjectural or hypothetical." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 996 (11th Cir. 2020).

Appellants assert three injuries: (1) associational standing on behalf of their voter members who are injured by the dilution of their votes; (2) associational standing and standing in their own right to redress the injury to the competitive landscape caused by the counting of unlawful votes; and (3) the diversion of its resources to address Georgia's unlawful signature matching

process. However, as the district court correctly found, none of these asserted injuries are "concrete and particularized" or "actual and imminent," and accordingly are insufficient to establish standing.

#### 1. Appellants allege a generalized grievance, not a particularized and concrete injury.

Appellants' theory of associational standing based on the alleged dilution of their members' votes is not a theory of standing that has been recognized by this Court. Appellants' theory is that county election officials are not consistently applying the procedures for verifying signatures on absentee ballot envelopes, which will result in invalid ballots being counted that will dilute the lawful votes of their members. However, this is not an injury particularized to Appellants that is "distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916, 1923 (2018). As this Court held in *Wood*, a claim that the government has not followed the law, without more, is a generalized grievance, because any voter can raise it. 2020 U.S. App. LEXIS 37971 at *12. Appellants cannot "explain how [their] interest in compliance with state election laws is different from that of any other person," because all Georgia voters could be said to share Appellants' interest in ensuring that the run-off election

is properly administered. 2020 U.S. App. LEXIS 37971 at *13. *see also Lance v. Coffman*, 549 U.S. 437, 440– 41 (2007) (holding that "a generalized grievance that is plainly undifferentiated and common to all members of the public" is not sufficient for standing).

This Court expressly rejected Appellants' vote dilution theory as a basis for standing in *Wood*. Vote dilution can support standing in the context of gerrymandering or malapportionment cases because, in those types of cases, "vote dilution occurs when voters are harmed compared to 'irrationally favored' voters from other districts." *Id.* at 12 (citing *Baker v. Carr*, 369 U.S. 186, 207-08 (1962)); *see also Gill v. Whitford*, 136 S. Ct. 1916, 1930 (2018) (distinguishing gerrymandering cases like *Baker* in which voters alleged "facts showing disadvantage to themselves as individuals"). But this Court in *Wood* was careful to distinguish malapportionment cases from the kind of generalized vote dilution from the miscounting of votes that Appellants allege here, stating, "no single voter is specifically disadvantaged" if a vote is counted improperly, even if the error might have a "mathematical impact on the final tally and thus on the proportional effect of every vote." *Wood*, 2020 U.S. App. LEXIS 37971 at *13 (citing *Bognet v. Sec'y*

*Commonwealth of Pa.*, 2020 WL 6686120, at *12 (3d Cir. Nov. 13, 2020).

Appellants misrepresent what this Court said about candidate standing in *Wood*. In their motion, they quote this Court as stating, "a political candidate harmed by [a state election process]" suffers "a personal, distinct injury." (Motion at 9) (citing *Wood*, 2020 WL 7094866, at *4). But the bracketed words in the quote above are very different from what was actually written, which is, "if Wood were a political candidate harmed *by the recount*, he would satisfy this requirement because he could assert a personal, distinct injury. *Cf. Roe v. Alabama ex rel. Evans*, 43 F.3d 574, 579 (11th Cir. 1995)." *Wood*, 2020 WL 7094866, at *4 (emphasis added).

This Court was citing *Roe* as an example of a case in which the plaintiffs were candidates who *could* allege a personal, distinct injury. There, *candidates* (rather than, as here, the campaign committees for the candidates) challenged a state court order requiring that a specific batch of non-conforming absentee ballots be included in a recount. *Id.* at 581. Even so, standing was not an issue raised in that case, and this Court refrained from overturning the state court order and certified the question of state law to the Alabama Supreme Court. Id. at 581-82. Neither

*Roe* nor *Wood* stand for the broad proposition that candidates or their campaign committees have standing to challenge any state election process as Appellants contend.

Finally, Appellants' asserted "injury to the competitive landscape" is also not a recognized basis for standing. Appellants seek to vindicate "group political interests, not individual legal rights." *Gill*, 138 S. Ct. at 1933. But federal courts are "not responsible for vindicating generalized partisan preferences." *Id.*; *see also Jacobson*, 974 F.3d at 1251 (holding that a political organization's general interest in its preferred candidates winning elections is a "generalized partisan preference" that federal courts are "not responsible for vindicating").

#### 2. Appellants' alleged injuries are based on hypothetical future harm that is not certainly impending.

Because Appellants seek prospective relief to prevent a future injury, they must also establish that "the threatened injury is certainly impending." *Indep. Party of Fla. v. Sec'y, State of Fla.*, 967 F.3d 1277, 1280 (11th Cir. 2020); *see also Jacobson*, 974 F.3d at 1245. Allegations of "possible future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

Appellants' alleged injuries are based entirely upon speculation that they will be harmed by the counting of allegedly unlawfully cast ballots and unequal application of the signature matching process in the upcoming January run-off. But Appellants offered no evidence that counties actually counted unlawful absentee ballots in the November general election, let alone are "certainly" likely to do so in the future. Any theory of standing that relies on a highly attenuated chain of possibilities does not satisfy the requirement that threatened injury must be certainly impending.

To the extent Appellants are relying on a diversion of resources theory to establish standing, this theory is also based on their speculative belief that counties *may* allow unlawful votes to be counted. But to establish an imminent injury, Appellants must show that the counting of unlawful votes is *actually likely* to occur. *See Clapper*, 568 U.S. at 402 ("[Appellants] cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 107 n. 8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").

Moreover, the district court correctly found that Appellants did not identify with specificity the expenditures they are making to address their perceived problems with absentee ballot verification process for the January run-off. Nor did they explain how electoral harm to their candidates is certain to occur absent injunctive relief. Even if harm to a candidate's electoral prospects is a sufficient basis for standing, there is no evidence that such harm is "certainly imminent" here for the two Senate candidate's campaign committees. *See Jacobson*, 974 F.3d at 1251 (concluding that the Democratic Party "never proved that electoral harm to one of the Party's candidates is 'certainly impending,' so it lacks standing to seek prospective relief").

### B. Appellants' alleged injuries are not traceable to Appellees, nor can they be redressed by their requested relief.

Not only have Appellants failed to demonstrate an injury in fact, they cannot satisfy the causation requirement of standing, which requires that "a plaintiff's injury must be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Jacobson*, 974 F.3d at 1253 (citation omitted); *see also Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1265

(11th Cir. 2011) (an injury sufficient to establish standing cannot "result [from] the independent action of some third party not before the court.").

Here, Appellants allege that *counties*—not the Secretary of State or State Election Board—are failing to implement signature verification procedures in a uniform or consistent manner. Under Georgia law, county elections officials are solely responsible for processing, validating, and tabulating absentee ballots. *See* O.C.G.A. § 21-2-386. As such, Appellants' claimed injury resulting from alleged irregularities in the signature verification process is not traceable to any of the State Defendants. *See Jacobson*, 974 F.3d at 1253 (concluding that alleged injury from state's ballot order statute was not traceable to the Secretary of State because county election superintendents were "independent officials who are not subject to the Secretary's control").

Similarly, no relief can be entered against the Appellees that would be binding on county officials, and Appellants cannot establish the redressability element of standing. This Court made clear in *Jacobson* that federal courts do not have the authority to exercise jurisdiction to order relief against county officials who have not been named as parties. 974 F.3d at 1253.

In sum, having failed to establish that they have suffered an injury in fact, or that their purported injury is traceable to or redressable by their requested injunction, Appellants lack standing, the action was properly dismissed, and this Court should deny their motion for an injunction pending appeal.

## II. This Court should deny injunctive relief under *Purcell v. Gonzalez* because the election process is already underway.

The Supreme Court has "caution[ed] against federal courts mandating new election rules—especially at the last minute." *New Ga. Project*, 976 F.3d at 1283 (citing *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006); *see also Democratic Nat'l Comm. v. Wis. State Legis.*, 592 U.S. ___, Slip Op. at 2 (2020) (J. Kavanaugh concurring in denial of application to vacate stay) (explaining that the Supreme Court "has repeatedly emphasized that federal courts ordinarily should not alter state election laws in the period close to an election—a principle often referred to as the *Purcell* principle.").

In this case, Appellants are not asking this Court to change Georgia's elections rules on the eve of an election. They are asking for something much worse: that this Court change Georgia's elections rules *in the middle of an election*. Early in-person voting has commenced as of December 14, 2020, with over 800,000 votes

being case early in-person as of December 18, 2020. *See* Statewide Absentee Voter Files for January 5, 2021, runoff election, *https://elections.sos.ga.gov/Elections/voterabsenteefile.do*, last accessed December 19, 2020. Approximately 524,000 absentee ballots have been printed, mailed, returned, signature-matched, and *accepted* by local election officials as of December 18, 2020. Yet, after waiting until December 10, 2020, to even commence this litigation, Appellants ask this Court to change Georgia's election rules midstream.

Appellants assert that the state's interests "are minimal" in not adding to the administrative burden of election officials at this juncture of the litigation. (Motion at 16). That contention is laughable. We are coming up on the holiday season, and the country, as well as Georgia, finds itself in the midst of ever-rising numbers in its populace testing positive for COVID-19. The ability of election officials to adequately staff election functions at the levels contemplated *for the established election framework* is tenuous in the current climate.

First, the "limited" relief Appellants seek in their motion would still significantly tie the hands of elections officials straining against the unprecedented number of absentee-by-mail ballots that they must process. The very purpose of the procedures

for processing ballots is to allow elections officials an orderly framework for opening, separating, and scanning (but not tabulating) absentee ballots so that they are not confronted with having to *start* processing over a million absentee ballots, along with the several million ballots produced by the ballot marking devices of in-person voting, on January 5, 2021, with the country anxiously awaiting the results of the two Senate races. Enjoining that process pending appeal will significantly hamper the ability of elections officials to expeditiously tabulate and report the election results and inject confusion and uncertainty into the electoral process, which runs the risk of eroding public confidence. *See Purcell*, 549 U.S. at 3-6 ("Given the imminence of the election and the inadequate time to resolve the factual disputes, our action today shall of necessity allow the election to proceed without an injunction suspending" the current election rules.).

Moreover, an injunction pending appeal would be futile because the relief Appellants ultimately seek most certainly violates the *Purcell* principle. Appellants want to significantly *increase* the number of election staff who will either need to be pulled off of other mission-critical election processes or recruited from the population as a whole, trained anew on the signature verification process, and then *re-verify* over half a million

absentee ballots because Appellants believe that not enough lawfully cast absentee ballots are being called into question. The current demands on election officials under already established election protocols, and the confusion that would result for both election officials and workers and the public at large *all* demand that this Court reject Appellants' belated attempts to obtain judicial relief.

## III. Appellants cannot satisfy the requirements for the extraordinary remedy of an injunction.

Even if Appellants could overcome the jurisdictional defects that are fatal to their appeal, they still fail to satisfy the requirements for the extraordinary remedy they seek. To prevail on their motion, Appellants must show: (1) a substantial likelihood that they will prevail on the merits of the appeal; (2) a substantial risk of irreparable injury to the Appellants unless the injunction is granted; (3) no substantial harm to other interested persons; and (4) no harm to the public interest. *Touchston v. McDermott*, 234 F.3d 1130, 1132 (11th Cir. 2000).

### A. Appellants are not likely to prevail on the merits of the appeal.

Appellants raised three constitutional counts in their Complaint, which they rely on in support of their motion.

Appellants claim that inconsistent application of OEB Guidance by county elections officials (1) is an undue burden on their associational and voting rights under the First and Fourteenth Amendment; (2) violates due process under the Fourteenth Amendment; and (3) violates equal protection under the Fourteenth Amendment. Because Appellants are not substantially likely to succeed on the merits of these claims, their motion for injunctive relief must be denied.

#### 1. Appellants' claim under the First and Fourteenth Amendments fails because they allege no harm to their voting or associational rights.

Appellants cannot show a constitutional injury to their right to vote. Typically, when deciding a constitutional challenge to state election laws under the First and Fourteenth Amendments, federal courts apply the *Anderson-Burdick* framework, which balances the burden on the voter with the state's interest in the voting regulation. *New Ga. Project*, 976 F.3d at 1280. But Appellants' claims do not fit within the *Anderson-Burdick* framework because they fail to identify a state policy that imposes a burden on the right to vote. Appellants make the attenuated argument that the current signature verification procedures make it too *easy* for absentee ballots to be counted, which in turn

"dilutes" the votes of Appellants' associated members. However, a claimed burden on the right to vote based on a partisan vote dilution theory has been rejected by this Court in *Jacobson*, 974 F.3d at 1247, as well as by the Third Circuit, who squarely rejected this theory of vote dilution as the basis for a Fourteenth Amendment claim. *Bognet*, 2020 WL 6686120, at *31-2 (stating that if "dilution of lawfully cast ballots by the 'unlawful' counting of invalidly cast ballots" was a constitutional violation, it would "transform every violation of state election law" into a potential federal constitutional claim).

This Court has been clear that not every "garden variety" election dispute gives rise to a constitutional deprivation that should be entertained in federal court. *Curry v. Baker*, 802 F.2d 1302, 1315 (11th Cir. 1986). Due process does not extend to examining the validity of individual ballots or supervising the administrative details of an election, and only in "extraordinary circumstances will a challenge to a state election rise to the level of a constitutional deprivation." *Id.*; see also *Gamza v. Aguirre*, 619 F.2d 449, 453 (5th Cir. 1980) ("If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute.").

Appellants cannot demonstrate "extraordinary circumstances" rising to the level of a constitutional deprivation. Appellants presented no proof in support of their claims below that unlawful votes have been cast or are likely to be cast. Instead, their arguments are based entirely on questionable expert analysis regarding signature rejection rates for the November general election, which only speculates that invalid votes *may* have been counted. However, Appellants cite to no authority supporting their preposterous notion that statistical sampling should ever be employed to determine how many voters should be able to exercise the franchise or whether election officials are tossing out a sufficient number of lawfully cast ballots. Moreover, Appellants ignore the valid reasons why less absentee ballots may ultimately have been rejected for the November general election, including legislative reforms that allowed absentee voter to cure deficiencies in their ballots, which were widely taken advantage of by voters.

#### 2. Appellants' equal protection claim fails because they cannot show arbitrary and disparate treatment among classes of voters

Appellants have not articulated a cognizable harm that invokes the Equal Protection Clause. In the voting rights context,

equal protection means that "[h]aving once granted the right to vote on equal terms, the state may not, by later arbitrary and disparate treatment, value one person's vote over that of another." *Bush v. Gore,* 531 U.S. 98, 104 (2000) (citation omitted). The OEB Guidance that Appellants challenge is facially neutral, and Appellants do not explain the guidance values one person's vote over another or treats voters arbitrarily or disparately. To the contrary, any actions taken by the State Election Board and Secretary of State in promulgating rules and issuing guidance were "in a wholly uniform manner across the entire state." *Wood v. Raffensperger*, No. 1:20-cv-4651-SDG, 2020 U.S. Dist. LEXIS 218058 at *26 (N.D. Ga. Nov. 20, 2020). Any alleged irregularities complained of by Appellants, if true, would have taken place at the county level under the supervision of elections officials who are not parties to this case.

The Supreme Court's decision in *Bush v. Gore* does not help Appellants, as that case found a violation of equal protection where certain counties were utilizing varying standards for what constituted a legal vote in the 2000 Florida recount. 531 U.S. at 105. Here, the promulgated rule and guidance provide a uniform and consistent standard in complete harmony with the statutory framework for each county to employ when verifying signatures on

absentee ballot envelopes, in order to avoid the kind of ad hoc standards that varied from county to county as found unconstitutional in *Bush v. Gore*.

### 3. Appellants' procedural due process claim fails.

This Court expressly declined to extend the strictures of procedural due process to a state's election procedures, as Appellants attempt here. *New Georgia Project*, 976 F.3d at 1282. "The generalized due process argument that the plaintiffs argued for would stretch concepts of due process to their breaking point." *Id.* Accordingly, this Court clarified that due process claims involving state election procedures should be analyzed under the *Anderson-Burdick* framework. And, as discussed above, Appellants fail to show an undue burden on their right to vote that rises to the level of a constitutional deprivation.

## B. The remaining factors weigh heavily against an injunction.

Appellants face no irreparable harm absent an injunction. While they cite to the "competitive injury their members will suffer absent relief" as irreparable harm (Motion at 21), Appellants "have no judicially enforceable interest in the outcome

of an election." *Jacobson*, 974 F.3d at 1246. Moreover, as Appellants are unlikely to prevail in their appeal, there is no reason to delay the processing of absentee ballots for the ongoing run-off election.

The lack of irreparable harm to Appellants is in contrast to the very real harm to elections officials and to voters that would result from an injunction. As discussed above, the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S.Ct. 1205, 1207 (April 6, 2020) (per curiam). "That mantra has consistently pointed the Supreme Court in one direction—allowing the States to run their own elections." *New Ga. Project*, 976 F.3d at 1283. This Court should decline to grant the extraordinary relief requested by Appellants, with the attendant confusion and uncertainty that would be injected into the electoral process. Even a brief administrative injunction runs the risk of eroding public confidence in the electoral process not being changed in the midst of the process to favor a particular candidate or group.

## IV. Laches bars Appellants' Claims.

Appellees also argued below that laches barred Appellants' claims, and laches remains as much of an immovable barrier to

Appellants' motion for an injunction as it was at the district court level. Appellants offer no reasonable excuse explaining their failure to challenge the election framework for signature verification much earlier. In *Wood*, the district court found that the plaintiff could have brought any challenge to the claim eight months *before* the election, but chose to wait until mid-November to assert the claim. *Wood v. Raffensperger*, 2020 U.S. Dist. LEXIS 218058 at *20-24 (N.D. Ga. Nov. 20, 2020). Appellants' delay in asserting these claims has substantially prejudiced the Appellees, through its election officials who have already expended scarce resources training election workers on the procedures to complete signature verification, as well as the members of the public who have already cast legal ballots under these established rules. Appellants have advanced no coherent rationale for waiting through the completion of four election cycles and the significant completion of a fifth prior to present their claims for judicial relief, nor have they explained away the significant prejudice that will accrue to the State, election officials, and the public at large were this court to throw judicial sand into the State's electoral engine at this late juncture.

## CONCLUSION

For the foregoing reasons, the Court should deny Appellants' emergency motion for an appellate injunction.

Respectfully submitted, this 19th day of December, 2020.

/s/ *Charlene S. McGowan*
Christopher M. Carr
*Attorney General of Georgia*
Bryan K. Webb
*Deputy Attorney General*
Russell D. Willard
*Senior Assistant Attorney General*
Charlene S. McGowan
*Assistant Attorney General*
Office of the Georgia Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3658
cmcgowan@law.ga.gov
*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 27(d)(2)(A) of the Federal Rules of Appellate Procedure because it contains 5025 words as counted by the word-processing system used to prepare the document. This brief also complies with the typeface and type-style requirements of Rule 32(a)(5) and (6) because it has been prepared in 14-point Century Schoolbook font.

/s/ *Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2020, I served the foregoing Brief of Appellees by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *Charlene S. McGowan*
Charlene S. McGowan
Assistant Attorney General